**UNITED STATES of America**

v.

**John Clarence McCULLOCH.**

Cr. No. 3–82–57.

United States District Court,
E.D. Tennessee, N.D.

Feb. 3, 1983.

Mary Ann Reese, Asst. U.S. Atty., Knoxville, Tenn., for plaintiff.

Joseph M. Tipton, Knoxville, Tenn., for defendant.

## MEMORANDUM

ROBERT L. TAYLOR, Chief Judge.

Defendant appeals from a conviction for violations of 36 C.F.R. 261.5(c) and (d) for causing timber, trees, brush and grass to burn without a permit and knowingly and willfully leaving a fire without completely extinguishing it. The case was tried on July 2, 1982 before the United States Magistrate sitting without a jury. Although the trial was tape-recorded, the tapes were subsequently discovered to be blank. The record, therefore, does not include the verbatim testimony of witness, opening and closing arguments, nor objections of counsels. The Magistrate has filed his handwritten trial notes and a ten-page "attempted reconstruction," (hereinafter cited as M.R.), of the record based on the notes. The appeal is further complicated by the fact that defendant is no longer represented by his trial counsel. His present counsel began representation on appeal.

Defendant presents two issues for review. He first says the case should be remanded for a new trial because the record is inadequate for appellate review. He also contends that the evidence is insufficient to support the convictions.

■ We find defendant's first assignment without merit. Rule 7(e) of the Rules of Procedure for the Trial of Misdemeanors before United States Magistrates provides as follows:

*Scope of Appeal.* The defendant shall not be entitled to a trial *de novo* by a judge of the district court. The scope of appeal shall be the same as on an appeal from a judgment of a district court and a court of appeals.

Rule 10(c) of the Federal Rules of Appellate Procedure provides for review as follows:

If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including his recollection. The statement shall be served on the appellee, who may serve objections or propose amendments thereto within 10 days after service. Thereupon the statement and any objections or proposed amendments shall be submitted to the district court for settlement and approval and as settled and approved shall be included by the clerk of the district court in the record of appeal. Rule 10(c) of Federal Rules of Appellate Procedure.

In this case the Magistrate has filed a detailed and thorough report of the evidence. Defendant filed no objections to the reconstruction, other than that it is not as complete as a verbatim transcript. Although defendant's counsel was not present at trial, he does not assert that prior counsel was unable to assist in reconstruction of the record or assigning error in the Magistrate's reconstruction. Under these circumstances, a new trial is clearly unwarranted.

■ Defendant's second assignment addresses the sufficiency of the evidence. As indicated above, our scope of review is the same as on an appeal from a district court judgment. Fed.R.P. for Tr. of Misd. before U.S. Mag. (7e). We are bound to view the evidence in the light most favorable to the Government, drawing all reasonable inferences consistent with the result. *United States v. Orrico,* 599 F.2d 113, 117

(6th Cir.1979). The decision of the Magistrate must be affirmed if there is substantial evidence to support a finding of guilt beyond a reasonable doubt. *Id.; United States v. Green,* 548 F.2d 1261, 1266 (6th Cir.1977). The Sixth Circuit's definition of substantial evidence is well settled:

Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion. It is evidence affording a substantial basis of fact from which the fact in issue can be reasonably inferred.

*Orrico,* 599 F.2d at 117; *Green,* 584 F.2d at 1266.

■ Beecher Colvin, District Fire Control Enforcement Officer in the Tellico Management Area of the Cherokee National Forest, testified that he received a report of a fire in the forest about 6:30 p.m. on December 7, 1981. (M.R. 1, 6). Officer Colvin testified that the fire conditions were of the worst class on that day. (M.R. 7). He went to the area where three fires had been discovered. All three of the fires had been extinguished by a family, the Millwoods, when he got to them. The Millwoods were still at the scene of the third fire.

Delaney Millwood testified that he and several others were camping in the Cherokee National Forest on the day of the fire. (M.R. 1–2). Mr. Millwood went to his bear stand about 2:15 p.m. and remained there until about 5:40 p.m. The stand was located between the Millwood camp and defendant's camp. Mr. Millwood testified that he could see the road between the two camps from the stand. He saw only one jeep come off the mountain that afternoon; he could not identify it. On leaving the stand, Mr. Millwood proceeded down the road in the direction of defendant's camp. He met defendant's Blazer traveling in the opposite direction. Mr. Millwood traveled about one-half mile, turned around, and found fire # 1 on the left side of the road near his bear stand. This was about five to six minutes after meeting defendant on the road. Mr. Millwood put out the fire, that had covered an eight-by-ten foot area. He

then waited at his bear stand until 6:15 p.m. when he heard shots in the direction of his camp. He went in that direction and came upon fire # 3. His two sons, grandson, and another man were putting out the fire.

Gwin Millwood, Delaney Millwood's 37 year old son, was hunting alone the afternoon of the fire. (M.R. 3–4). About 5:45 p.m. he returned to the empty bear stand. As he was going down the road, a Chevrolet Blazer passed him. Within three or four minutes, Gwin came upon fire # 2, which he put out alone. He then walked toward his camp for four to five minutes when he came upon fire # 3. He shot his gun to signal for help and began fighting the fire. Shortly thereafter, defendant's Blazer approached from the direction of the Millwood camp. Gwin testified that defendant refused to help and stated "Let it go, do it good to burn." (M.R. 3). Defendant left to get Alvin Millwood, Richard Millwood, and Johnny Johnson to help fight the fire. Defendant asked Gwin to go with him to get help. According to Gwin, defendant finally left the scene after the fire burned an area three times the size of the courtroom. It was only burning in places when he left. After 2:00 p.m., on the day of the fire, Gwin had not seen anyone other than forest officers, his family party, and defendant in the vicinity of the fires. (M.R. 4).

Alvin Millwood, Gwin's brother, testified that defendant came to the Millwood camp to get help in fighting fire # 3. Alvin had not seen anyone other than defendant on the road near the camp during the one to one and a half hours before the fire. Alvin heard defendant say to let the fire burn because it would do the mountain good. (M.R. 5).

Richard Millwood, Alvin's son, rode with defendant from the camp to fight fire # 3. (M.R. 6). Richard testified that during the ride, defendant stated "You all oughta let the fire burn, ain't going to hurt nothing, it will do the woods good this time of year." (M.R. 6).

Defendant admitted being in the area of the fires on December 7. (M.R. 7–9). He stated that he was looking for lost hunting dogs and did not start any fires. Although he testified that he does not use matches, he does smoke.

Defendant's presence in the vicinity of the fires, the absence of additional access roads in the area, and defendant's statements to the Millwoods at the time of the fires, all weigh in favor of the Magistrate's findings. We therefore conclude that there is substantial evidence to support defendant's convictions for violations of the regulations, as charged.

Accordingly, it is ORDERED that the judgment of the United States Magistrate be, and the same hereby is, affirmed.